FORM 104 (10/06)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFF<br>VANGUARD PRODUCTS CORPORATION | DEFENDANT<br>KIMI CITRIN, OMNI SOLO, INC., JOSEPH TESORIERE, LISA KENT,<br>STEPHEN J. CURLEY, TRIDAK, LLC, AND DYMAX CORPORATION |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Pullman & Comley, LLC, Irve J. Goldman, Esq., 850 Main St., P.O. Box 7006, Bridgeport, CT 06601-7006. | ATTORNEYS (If Known):<br>Robert Alan Schrage, Esq.    Patrick W. Begos, Esq.<br>2 Corporate Drive, Suite 234    Begos, Horgan & Brown LLP<br>Shelton, CT 06484    327 Riverside Avenue<br>Westport, CT 06880 |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    ☐ Other<br>☐ Trustee | ☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☒ Other<br>☐ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
**Complaint for breach of fiduciary duty, aiding and abetting breach, recovery of fraudulent transfers, recover of fees paid to professionals without court approval and successor liability.**

### NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recover of money/property - §542 turnover of property
- ☐ 12- Recover of money/property - §547 preference
- ☐ 13- Recover of money/property - §548 fraudulent transfer
- ☒ 14- Recover of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other) than domestic support
- ☐ 65-Dischargeability – other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – reinstatement of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand |

Other Relief Sought

FORM 104 (10/06), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Indicon, Inc.. | | BANKRUPTCY CASE NO.<br>04-51376 |
| DISTRICT IN WHICH CASE IS PENDING<br>CONNECTICUT | DIVISIONAL OFFICE<br>BRIDGEPORT | NAME OF JUDGE<br>ALAN H.W. SHIFF |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|
| /s/ Irve J. Goldman |

| DATE<br>5/9/2011 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Irve J. Goldman |
|---|---|

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

ACTIVE/72816.1/IJG/2461045v1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re: | x | |
| | : | |
| INDICON, INC., | : | Chapter 11 |
| | : | |
| Debtor. | : | Case No. 04-51376 (AHWS) |
| | : | |
| | : | |
| | x | |
| VANGUARD PRODUCTS | x | |
| CORPORATION, | : | |
| | : | |
| Plaintiff | : | |
| v. | : | |
| | : | |
| KIMI CITRIN, OMNI SOLO, INC., | : | Adv. Pro. No. |
| JOSEPH TESORIERE, LISA KENT, | : | |
| STEPHEN J. CURLEY, TRIDAK, | : | |
| LLC AND DYMAX CORPORATION, | : | |
| | : | |
| Defendants | x | |

**COMPLAINT FOR (A) BREACH OF FIDUCIARY DUTY; (B) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; (C) AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS; (D) RECOVERY OF FEES PAID TO PROFESSIONALS WITHOUT COURT APPROVAL; (E) VIOLATION OF CUTPA; AND (F) SUCCESSOR LIABILITY**

Vanguard Products Corporation ("Vanguard"), as and for its complaint against

Defendants, Kimi Citrin ("Citrin"), Omni Solo, Inc. ("Omni Solo"), Joseph Tesoriere

("Tesoriere"), Lisa Kent ("Kent"), Stephen J. Curley ("Curley") and Dymax Corporation ("Dymax") (collectively, "Defendants"), respectfully alleges the following:

1.      On November 30, 2004 (the "Petition Date"), Indicon, Inc. ("Indicon" or "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code and continued to operate during its chapter 11 case (the "Chapter 11 Case") as a debtor-in-possession pursuant to sections 1107 and 1108 of Title 11 of the United States Code (the "Bankruptcy Code").  The Debtor did business under the name, "Tridak."

2.      Paul Citrin was the Debtor's President from the Petition Date until in or about February 2007, when he passed away.  Thereafter, his wife Kimi Citrin, who was previously the Debtor's office manager, became the Debtor's President and a director of the Debtor.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b), 28 U.S.C. §157(b)(1), (2)(A), (H) and (O), and the order of referral of the United States District Court for the District of Connecticut, dated September 21, 1984.

4.      The name, number and chapter of the case under the Bankruptcy Code to which this adversary proceeding relates are as follows:  In re Indicon, Inc., Chapter 11, Case No. 04-51376 (AHWS), pending in the Bridgeport Division of this Court.

2

5.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (H) and (O).

6.     Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §1409(a), (c) and (d).

## FACTUAL BACKGROUND

7.     As of the Petition Date, Vanguard was the Debtor's landlord under a written lease agreement dated September 27, 2001 for the Lease of the Debtor's business premises (the "Original Lease"). The Original Lease was for a five-year term from October 1, 2001 to October 31, 2006.

8.     Despite the fact that Vanguard was the Debtor's landlord under the Original Lease, which, as of the Petition Date, has not yet expired, the Debtor did not list Vanguard as a creditor nor did it give Vanguard any notice of the Debtor's chapter 11 filing or existence of the Chapter 11 Case. The Debtor also did not give Vanguard notice of the deadline for filing proofs of claim, which was set as March 28, 2005, nor did the Debtor provide notice to Vanguard of the hearing on its disclosure statement or plan of reorganization.

9.     During the Chapter 11 Case, the Debtor ignored or simply overlooked its obligation to assume or reject the Original Lease or to seek an extension of time from the Court to make that decision, as required by 11 U.S.C. §365(d)(4) (revised by Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, hereafter

"BAPCPA").[1] The pre-BAPCPA version of §365(d)(4) required a chapter 11 debtor to assume or reject a lease of commercial real estate within 60 days of the filing of the bankruptcy case or obtain an extension of time from the bankruptcy court to make that decision. The Debtor did not comply with either of those statutory directives.

10.     By Lease Extension Agreement dated October 27, 2006 (the "Lease Extension"), Vanguard and the Debtor extended the terms of the Original Lease for an additional five-year period, from November 1, 2006 to October 31, 2011, and revised the rent for that additional period. All other terms and provisions of the Original Lease were incorporated by and remained operative under the Lease Extension.

11.     Notwithstanding the confirmation of the Debtor's plan of reorganization, as more fully set forth below, Vanguard's claim under the Lease Extension has not been discharged.

12.     The Debtor retained and was represented by Kent as its bankruptcy counsel for the duration of the Chapter 11 Case. On January 14, 2005, Kent filed a Statement Pursuant to Rule 2016(B), disclosing that she had been paid $3,000 for her representation of the Debtor, but at no time did the Debtor or Kent ever file an application for approval of Kent's employment pursuant to section 327 of the Bankruptcy Code.

---

[1] BAPCPA became effective for all cases filed on or after October 17, 2005. Thus, the provisions of BAPCPA did not apply to the Chapter 11 Case.

13.     One of the main activities in the Chapter 11 Case was the litigation and resolution of the Debtor's dispute with a secured creditor, LLP Mortgage Ltd. ("LLP Mortgage"). The Debtor retained Curley to represent it in connection with its dispute with LLP Mortgage.

14.     On March 21, 2005, the Debtor filed an application to retain Curley as special counsel to represent the Debtor in a Superior Court action brought by LLP Mortgage against the Debtor (the "3/21/05 Application"). The 3/21/05 Application was never acted upon by the Court, and on May 27, 2005, a second application was filed to retain Curley as special counsel (the "5/27/05 Application").

15.     The 5/27/05 Application was denied on June 10, 2005 for failure to comply with the Court's contested matter procedure guidelines, and on June 16, 2005, a third application was filed to retain Curley as special counsel (the "6/16/05 Application"). The 6/16/05 Application, as did the 5/27/05 Application, sought to expand the services of Curley as special counsel not just to include representation of the Debtor in the Superior Court action, but also in any actions or proceedings in the bankruptcy court relating to the dispute with LLP Mortgage.

16.     The 6/16/05 Application specified that Curley would "seek compensation based on normal and usual hourly billing rates" and would seek to be reimbursed for expenses. The 6/16/05 Application was granted by order entered on July 19, 2005.

17.    On June 16, 2005, the Debtor filed an objection to LLP Mortgage's claim (the "LLP Claim Objection").  After extended litigation and the scheduling of a trial on the LLP Claim Objection for September 12, 2007, the Debtor and LLP Mortgage agreed to settle the litigation by a withdrawal of LLP Mortgage's claim.  Accordingly, on July 27, 2007, LLP Mortgage filed a voluntary withdrawal of its claim, which was granted by order entered on September 10, 2007.

18.    By reference to the docket, no activity took place in the Chapter 11 Case from September 10, 2007 until March 4, 2008, when the United States Trustee filed a motion to convert or dismiss the Chapter 11 Case (the "UST Motion").

19.    The UST Motion precipitated the filing by the Debtor of six past due monthly operating reports, from March 2007 through August 2007, on March 11, 2008.  These operating reports had to be re-filed on May 13, 2008, with the Debtor's signature, because they were missing a signature by the Debtor.

20.    Also on May 13, 2008, the Debtor filed past due monthly operating reports for September 2007 through April 2008.

21.    During the Chapter 11 Case, the Debtor was approached by Dymax with an interest in purchasing the Debtor's assets.

22.    The Debtor, by Citrin as its President, executed a letter of intent with Dymax, dated March 18, 2008, for the purchase of the Debtor's assets for the sum of

6

$135,000 (the "Letter of Intent").  A true and correct copy of the Letter of Intent is attached hereto as **Exhibit "A."**

23.     The Debtor was assisted in the negotiation of the Letter of Intent by Tesoriere, who is the principal of Omni Solo.

24.     At all material times during the Chapter 11 Case, the Debtor utilized the services of Tesoriere and/or Omni Solo as a business or financial advisor and in addition, after February 2007, as its chief restructuring officer.  Neither Tesoriere's nor Omni Solo's employment as a financial advisor, business advisor or chief restructuring officer was ever approved by the Court under the applicable sections of the Bankruptcy Code.

25.     Upon information and belief, Tesoriere and/or Omni Solo not only actively assisted the Debtor in negotiating the Letter of Intent, but played an active role in procuring an eventual Asset Purchase Agreement between the Debtor and an entity known as Tridak, LLC ("Tridak LLC"), dated July 18, 2008, and in formulating the strategy for consummating the sale of the Debtor's assets to Dymax or Tridak LLC given the pendency of the Chapter 11 Case.

26.     Tridak LLC was formed by Dymax on May 23, 2008 as a Connecticut limited liability company, for the purpose of purchasing the Debtor's assets and integrating them into Dymax's business.  Dymax is the sole member of Tridak LLC.

27.    On May 15, 2008, in furtherance of the anticipated sale of the Debtor's assets to Dymax or Tridak LLC, Dymax provided Citrin with an Employment Agreement dated June 1, 2008, whereby Citrin became employed by Dymax for a period of four years and was to be paid compensation in the amount of $400,000, payable in 48 equal monthly installments of $8,333.33 (the "Citrin Employment Agreement").  A true and correct copy of the Citrin Employment Agreement is annexed hereto as **Exhibit "B."**

28.    On May 23, 2008, while the Debtor was in the process of finalizing an Asset Purchase Agreement with Tridak LLC, the Debtor filed a disclosure statement with the bankruptcy court (the "Disclosure Statement"), but the bankruptcy court docket does not indicate that a plan of reorganization was filed by the Debtor until July 21, 2008, at which time it filed a "First Plan of Reorganization Proposed by the Debtor" (the "Plan").  Neither the Disclosure Statement nor the Plan mentioned a pending or prospective sale of the Debtor's assets to Dymax or Tridak LLC, let alone any employment of Citrin by Dymax.

29.    A hearing on the Disclosure Statement was held on July 15, 2008, following which it was approved by the Court by order of July 21, 2008.  A hearing on confirmation of the Plan was also scheduled for August 19, 2008.

30.    On July 17, 2008, just two days after the hearing on the Disclosure Statement, the Debtor, by Citrin, and Tridak LLC executed an Asset Purchase

Agreement (the "APA"), a true and correct copy of which is annexed hereto as **Exhibit "C,"** and an Escrow Agreement (the "Escrow Agreement"), a true and correct copy of which is annexed hereto as **Exhibit "D."**

31.     The Escrow Agreement at ¶ 2(b)(i) specifically contemplates the confirmation of a plan of reorganization by the Debtor, and the APA, in addition to providing for a sale of substantially all of the Debtor's assets, as described therein (the "Assets"), to Tridak LLC, requires an opinion letter from Curley opining that the Debtor is no longer subject to the jurisdiction of the bankruptcy court and that the sale of the Debtor's Assets to Tridak is free and clear of all liens and encumbrances (APA ¶ 2b.vi.).

32.     By letter of July 18, 2008, signed by Citrin and Richard Golebiewski on Dymax letterhead, the Debtor's employees were advised that the Debtor was "nearing the final steps in the Dymax acquisition of Tridak," and had "now turned to the task of integrating Tridak operations into Dymax" (the "7/18/08 Letter to Employees"). A true and correct copy of the 7/18/08 Letter to Employees is attached hereto as **Exhibit "E."**

33.     Following the hearing on confirmation, the Plan was confirmed by order of August 21, 2008 (the "Confirmation Order"). The Debtor did not provide notice to Vanguard of the hearing on the Disclosure Statement or of the hearing on confirmation of the Plan, and Vanguard otherwise had no actual notice or knowledge of those events until well after they occurred.

34.     The Plan does not provide for any treatment to the Debtor's general unsecured creditors.  That treatment can only be found at Part VI of the Disclosure Statement, which states that unsecured creditors are to receive 20% of their claims. The Disclosure Statement further states that the funds for implementing the Plan are coming from "shareholder loans and third party loans in the amount of $41,000." (Disclosure Statement Part VII).  The Plan estimates that the Debtor would distribute approximately $46,000 to pay all claims (Plan §6.1), and provides that all of the Debtor's property would "revest" in the Debtor on confirmation ("Plan § 7.1).

35.     There is no provision in the Plan or Disclosure Statement for the sale of assets by the Debtor, as would be required by sections 1123(a)(5)(B) or (D) of the Bankruptcy Code if the assets of the Debtor were going to be sold.  Yet, less than 30 days after the entry of the Confirmation Order, the Debtor sold all of its Assets to Tridak LLC for the sum of $135,000 pursuant to the APA, as more fully set forth below.

36.     After waiting for confirmation of the Plan, the Debtor and Dymax shortly thereafter proceeded to consummate the sale transaction pursuant to the APA they executed on July 18, 2008.

37.     One of the items the Debtor was to deliver to Tridak LLC at closing was an opinion letter from Curley that the Debtor was no longer subject to bankruptcy court jurisdiction and that the Assets to be sold under the APA would be sold free and clear of all liens and encumbrances.

38. Before Curley would deliver an opinion letter to Dymax, he consulted with Kent to determine what he would need from her in order to issue his opinion letter. Together, Curley and Kent determined it would be sufficient for Curley to receive an affidavit from Kent stating that the Debtor's creditors were paid pursuant to the Plan and that an application for a final decree would be filed by a date certain.

39. On September 11, 2008, Kent executed and delivered an affidavit to Curley for him to use as a basis for issuing his opinion letter to Tridak LLC pursuant to ¶2b.vi. of the APA. A true and correct copy of this affidavit is attached hereto as **Exhibit "F."**

40. On September 12, 2008. Curley issued his opinion letter to Dymax in accordance with ¶2b.vi. of the APA (the "Curley Opinion Letter"). A true and correct copy of the Curley Opinion Letter is attached hereto as **Exhibit "G."**

41. By Bill of Sale dated September 15, 2008 (the "Bill of Sale"), a true and correct copy of which is attached hereto as **Exhibit "H,"** the Debtor consummated the sale of the Assets to Dymax and in exchange received the amount of $135,000 (the "Sale Proceeds").

42. From the Sale Proceeds, Kent was paid the sum of $15,000 by check dated September 15, 2008 and signed by Citrin as President of the Debtor.

43. From the Sale Proceeds, Omni Solo was paid the sum of $82,800 by check dated September 15, 2008 and signed by Citrin as President of the Debtor.

44.   On or about October 29, 2008, the Debtor vacated the premises it was leasing from Vanguard under the Lease Extension, moved its operations to Dymax's place of business and has failed to pay rent and other amounts due under the Lease Extension.   An amount in excess of $117,000 is due and owing by the Debtor to Vanguard under the Lease Extension Agreement.

45.   From the Sale Proceeds, Curley received payments for defending the Debtor in a state court action brought by Vanguard against the Debtor for breach of the Lease Extension Agreement.

46.   During the Chapter 11 Case, Curley received payments from the Debtor for his services as special counsel, as well as for services in connection with the sale transaction with Tridak LLC, in excess of $72,000.

47.   The Debtor filed an application for entry of final decree, first on December 29, 2008 and then on January 27, 2009 after the first application was denied for failure to comply with the contested matter procedures.   The application represented that: (a) all of the property proposed by the Plan to be transferred was transferred; (b) the Debtor has assumed the business and management of all or substantially all of the property dealt with by the Plan; and (c) "[t]here are no other facts which must be brought to the Court's attention to enable it to rule this [sic] application."

48.    The representations in the Debtor's application for a final decree were false.  The property proposed by the Plan to be transferred was not transferred as proposed, because the Plan proposed that the Debtor's property would revest in the Debtor, not that it would be sold less than 30 days after confirmation.  Further, the Debtor did not assume the business and management of the property dealt with by the Plan, because that property was sold to a third party almost immediately after the Plan was confirmed.

49.    On January 16, 2009, the Debtor filed a series of monthly operating reports for the months of August, September, October, November and December 2008.  Each of the operating reports was signed under penalty of perjury by the Debtor's President, Citrin, the same individual who signed the Bill of Sale which effectuated the sale of all of the Debtor's assets to Tridak LLC.

50.    In the Debtor's September 2008 monthly operating report, on the schedule of Cash Receipts and Disbursements, there is nothing reported for the item, "Sale of Assets," and on the last page of the report, an "x" is marked in the column, "No," in response to the following question:   "1. Have any assets been sold or transferred outside the normal course of business this reporting period."   The conclusion is undeniable that the Debtor, by its President, Citrin, fraudulently failed to disclose the sale of the Debtor's Assets in September 2008 to Tridak LLC.

13

51.     The Debtor's sale of its Assets to Tridak LLC while pursuing and obtaining confirmation of the Plan and failing to disclose the anticipated sale constituted a fraud on the Court and the Debtor's creditors.

## CAUSES OF ACTION

### I.
### BREACH OF FIDUCIARY DUTY
### (Vanguard v. Citrin)

52.     Vanguard incorporates by reference paragraphs 1 through 51 of this Complaint as if they were fully set forth at length.

53.     At all relevant times, Citrin, as President and a director of the Debtor, had a fiduciary duty to the Debtor and its creditors to fully disclose the proposed and actual asset sale to Dymax or Tridak LLC, to maximize the value of the Debtor's assets for the benefit of its creditors, to place the creditors' interests above her own in her dealings with the Debtor and to refrain from engaging in fraudulent representations and omissions on behalf of the Debtor.

54.     Citrin breached her fiduciary duties to the Debtor and its creditors by: (i) failing to disclose the Debtor's anticipated and actual sale of Assets to Tridak or Dymax to the Debtor's creditors or the Court; (ii) failing to follow the proper procedure for soliciting higher and better bids for the Assets and otherwise selling the Assets in the Chapter 11 Case: (iii) prosecuting the Plan to confirmation under the false

pretense that the Debtor would continue in operation after paying creditors a fraction of their claims; (iv) affirmatively misrepresenting in the Debtor's September 2008 monthly operating report that there were no sales of the Debtor's assets outside the normal course of business; (v) benefiting personally from the assert sale by receiving *inter alia,* the Citrin Employment Agreement and payments from the Sale Proceeds; and (vi) causing the Debtor to pay unauthorized fees to Omni Solo, Kent and Curley.

55.     As a result of the foregoing, Vanguard has been damaged.

## II.
## AIDING AND ABETTING
## BREACH OF FIDUCIARY DUTY
## (Vanguard v. Tesoriere and Omni Solo)

56.     Vanguard incorporates by reference paragraphs 1 through 55 of this Complaint as if they were fully set forth at length.

57.     Tesoriere and Omni Solo knowingly and substantially assisted Citrin in one or more of the breaches of her fiduciary duties as set forth in ¶¶53 and 54 hereof.

58.     Tesoriere and Omni Solo were aware of their role as part of an overall illegal or tortious activity at the times they provided assistance to Citrin and the Debtor relative to the Debtor's asset sale to Tridak LLC.

59.     The assistance provided by Tesoriere and Omni Solo was a substantial factor in bringing about the breaches of fiduciary duty by Citrin.

### III.
### FRAUDULENT
### TRANSFER UNDER CONNECTICUT UNIFORM
### FRAUDULENT TRANSFER ACT
### (Vanguard v. Tesoriere and Omni Solo)

60.    Vanguard incorporates by reference paragraphs 1 through 59 of this Complaint as if they were fully set forth at length.

61.    The Debtor's payment to Omni Solo of $82,800 by check dated September 15, 2008 was made without the Debtor receiving reasonably equivalent value and the Debtor was either:  (A) insolvent at the time or became insolvent as a result of the payment; or (B) reasonably should have believed that it incurred debts beyond its ability to pay as they came due.

62.    Tesoriere should be deemed to be the alter-ego of Omni Solo with respect to the latter's receipt of the $82,800 payment from the Debtor.

### IV.
### RECOVERY OF FEES
### PAID TO PROFESSIONAL
### WITHOUT COURT APPROVAL
### (Vanguard v. Kent)

63.    Vanguard incorporates by reference paragraphs 1 through 62 of this Complaint as if they were fully set forth at length.

16

64.     Kent was paid $15,000 by the Debtor for legal fees without Kent ever getting retained by the Court as counsel for the Debtor or applying for compensation under sections 331 or 330 of the Bankruptcy Code.

65.     The amount the Debtor paid to Kent for legal fees may be recovered under section 105(a) of the Bankruptcy Code.

## V.
## RECOVERY OF FEES
## PAID TO PROFESSIONAL
## WITHOUT COURT APPROVAL
## (Vanguard v. Curley)

66.     Vanguard incorporates by reference paragraphs 1 through 65 of this Complaint as if they were fully set forth at length.

67.     Curley was paid in excess of $72,000 by the Debtor during the Chapter 11 Case on account of legal fees without authorization by the Court or application under sections 331 or 330 of the Bankruptcy Code.

68.     The amount the Debtor paid to Curley for legal fees during the Chapter 11 Case may be recovered under section 105(a) of the Bankruptcy Code.

17

## VI.
## RECOVERY OF FEES
## PAID TO PROFESSIONALS
## WITHOUT COURT APPROVAL
## (Vanguard v. Omni Solo and Tesoriere)

69.     Vanguard incorporates by reference paragraphs 1 through 68 of this Complaint as if they were fully set forth at length.

70.     Omni Solo and Tesoriere performed services for the Debtor as a financial or business advisor and chief restructuring officer during the Chapter 11 Case.

71.     Omni Solo and Tesoriere were "professional persons" within the meaning of section 327(a) of the Bankruptcy Code with respect to the services they were performing for the Debtor, thus requiring them to be employed by the Debtor pursuant to application and approval of the Court under section 327(a) of the Bankruptcy Code.

72.     The Debtor paid Omni Solo $82,800 by check dated September 15, 2008 for services it and Tesoriere performed for the Debtor as "professional persons."

73.     The amount the Debtor paid to Omni Solo on account of such services may be recovered under Section 105(a) of the Bankruptcy Code.

**VII.**
**CLAIM UNDER**
**CONNECTICUT UNFAIR**
**TRADE PRACTICES ACT**
**(Vanguard v. Citrin, Omni, Solo and Tesoriere)**

74.     Vanguard incorporates by reference paragraphs 1 through 73 of this Complaint as if they were fully set forth at length.

75.     The actions of Citrin as alleged in ¶ 54 hereof and of Omni Solo and Tesoriere in providing substantial assistance to Citrin and the Debtor in taking one or more of those actions, constitute unfair and deceptive acts or practices in the conduct of trade or commerce within the meaning of Connecticut's Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110b, et. seq.

76.     As a result of these unfair and deceptive acts or practices, Vanguard has suffered an ascertainable loss of money or property and is entitled to recover actual damages.

77.     An award of punitive damages under CUTPA is warranted because the foregoing actions were taken with a reckless indifference to the rights of others, such as Vanguard, or with an intentional or wanton violation of those rights.

## VIII.
## FRAUDULENT TRANSFER
## UNDER CONNECTICUT UNIFORM
## FRAUDULENT TRANSFER ACT
## (Vanguard v. Tridak LLC and Dymax)

78.    Vanguard incorporates by reference paragraphs 1 through 77 of this Complaint as if they were fully set forth at length.

79.    The sale of the Debtor's Assets to Tridak LLC was done with actual intent to hinder, delay or defraud creditors of the Debtor, of which Vanguard was one.

80.    Tridak LLC, the transferee of the Assets, participated in the Debtor's fraudulent transfer of its Assets to Tridak LLC.

81.    Tridak LLC's corporate veil should be pierced to hold Dymax liable for the fraudulent transfer on the basis that Dymax completely dominated Tridak LLC with respect to the Assets sale transaction and negotiations in connection therewith, such control was used by Dymax to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of Vanguard's legal rights; and the aforesaid control and breach of duty proximately caused the injury or unjust loss complained of.

## IX.
## SUCCESSOR LIABILITY
## (Vanguard v. Tridak LLC and Dymax)

82.     Vanguard incorporates by reference paragraphs 1 through 81 of this Complaint as if they were fully set forth at length.

83.     The sale of the Debtor's Assets to Tridak LLC was entered into fraudulently to escape liability from the legitimate creditors of the Debtor, such as Vanguard.

84.     Tridak LLC should be held liable as a successor to the Debtor for the Debtor's indebtedness to Vanguard under the Lease Extension.

85.     Tridak LLC's corporate veil should be pierced to hold Dymax liable based on the allegations set forth in ¶ 81 hereof.

**WHEREFORE**, Vanguard respectfully requests the following relief:

1.     An award of actual damages for all amounts due under the Lease Extension Agreement;

2.     An award of punitive damages against Citrin, Omni Solo and Tesoriere based on their wanton or willful malicious misconduct;

3.     Avoidance and recovery of the transfer of the Assets or a judgment for the value of the Assets transferred, to the extent necessary to satisfy Vanguard's claim;

21

4.     Imposition of successor liability against Tridak LLC and Dymax for all

amounts owing to Vanguard under the Lease Extension; and

5.     Such other and further relief as the Court may deem just, equitable and

proper.

Dated:  Bridgeport, Connecticut
        May 9, 2011

Respectfully submitted,


By: /s/ Irve J. Goldman
    Irve J. Goldman (ct02404)
    Pullman & Comley, LLC
    850 Main Street, P.O. Box 7006
    Bridgeport, CT  06601-7006
    (203) 330-2000  Fax:  203-576-8888
    igoldman@pullcom.com

    Attorneys for Plaintiff,
    Vanguard Products Corporation


ACTIVE/72816.1/IJG/2453896v1